IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PANTHERA RAILCAR LLC,<br><br>    Plaintiff,<br>   v.<br>KASGRO RAIL CORP., *et al.*,<br><br>    Defendants.<br>                                 / | No. C 12-06458 SI<br><br>**ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND TRANSFERRING ACTION TO THE WESTERN DISTRICT OF PENNSYLVANIA** |

    Currently before the Court are the Kasgro defendants' motions to dismiss for lack of personal jurisdiction and improper venue, and defendant KR Logistics' motion to dismiss for lack of personal jurisdiction, improper venue, and failure to state a claim. Pursuant to Civil Local Rule 7-1(b), the Court finds these matters appropriate for resolution without oral argument and hereby VACATES the hearing scheduled for May 14, 2013. For the reasons set forth below, the Court GRANTS defendants' motions to dismiss for lack of personal jurisdiction and TRANSFERS the action to the Western District of Pennsylvania.

**BACKGROUND**

**1.    The Parties**

    Plaintiff Panthera Railcar LLC ("Panthera") is a Delaware limited liability company that specializes in investing in large cost equipment. First Amended Compl. ("FAC") ¶¶ 1, 12. Panthera maintains its principal place of business in San Francisco, California. *Id.* ¶ 1.

    Defendant Kasgro Rail Corporation ("Kasgro Rail") is a Pennsylvania corporation with its principal place of business in New Castle, Pennsylvania. *Id.* ¶ 2. Kasgro Rail manufactures and leases

heavy duty rail cars. *Id.* ¶ 31.

Defendant Kasgro Leasing, LLC ("Kasgro Leasing") is a Pennsylvania LLC and allegedly a subsidiary of Kasgro Rail. *Id.* ¶ 3. Kasgro Leasing "both leases rail cars as a lessee, and sub-leases rail cars as a lessor." *Id.* ¶ 31. Defendant Kasgro Rail Car Management is allegedly "a subsidiary of Kasgro Rail and an assumed name and d/b/a/ of Kasgro Leasing." *Id.* ¶ 5.

Defendant KR Logistics, LLC is a Wisconsin LLC and maintains its principal place of business in Milwaukee, Wisconsin. *Id.* ¶ 4.

According to Panthera, the four defendants "were commonly controlled and are and were the principal, agent, employee, servant, alter ego, joint venturer, partner, assignee, successor, predecessor, co-conspirator, guarantor, and/or delegee of each other" and acted "with the permission and consent of each other and within the course and scope of such relationships with actual and apparent authority to do so." *Id.* ¶ 7.

**2.     The Underlying Factual Allegations**

In 1997, Kasgro Rail and Kasgro Leasing leased a fleet of twenty-two heavy duty rail cars (the "Rail Cars") from CLC Equipment Company, the original lessors of the Rail Cars. CLC Equipment Company then sold its interest in the Rail Cars to Railroad Technology Corp. In September 2011, Panthera purchased Railroad Technology Corp.'s ownership interest in the Rail Cars, pursuant to the lease with Kasgro Rail and Kasgro Leasing. *Id.* ¶ 16.

Leading up to Panthera's purchase of the Rail Cars, Kasgro Rail and Kasgro Leasing provided Panthera with a notice and acknowledgment of conditional assignment in August 2011. *Id.* ¶ 18, Ex. D. According to the acknowledgment, "no defaults or breaches of any representations, warranties or covenants or Events of Default under the Lease had occurred or [were] continuing." *Id.*, Ex. D.

The lease agreement was governed by a 2005 revision to the lease (the "2005 Revised Lease"). Under the 2005 Revised Lease, Kasgro Rail and Kasgro Leasing agreed not to enter into any new leases or acquire any heavy-duty railcars without the prior written approval of the lessor. *Id.*, Ex. C.

Panthera alleges that defendants systematically violated this agreement by buying and leasing additional rail cars, hiding rent payments that should have gone to the profit sharing pool, and

2

interfering with Panthera's purchase of rail cars. FAC ¶¶ 62–101. Panthera alleges that defendants leased over 60 heavy duty rail cars in 2010 and purchased other rail cars between 2008 and 2011. *Id.* ¶¶ 67, 73, 89. In addition, Kasgro Rail and Kasgro Leasing leased out rail cars to Westinghouse Electric Company, LLC but assigned the lease to KR Logistics to divert revenues to KR Logistics that otherwise should have been calculated as additional rent in the profit sharing pool. *Id.* ¶ 85. Finally, Panthera alleges that Kasgro Rail and Kasgro Leasing prevented Panthera from purchasing 94 rail cars from GE Cars in 2012. *Id.* ¶¶ 91–101.

On December 20, 2012, Panthera filed this suit against Kasgro Rail, Kasgro Leasing, Kasgro Rail Car Management, LLC (collectively "Kasgro") and KR Logistics. Panthera alleges breach of contract, breach of the implied covenant of good faith and fair dealing, intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, and negligent misrepresentation against Kasgro Rail and Kasgro Leasing. *Id.* ¶¶ 116–145, 158–161. Panthera alleges fraud and unfair business practices in violation of California Business & Professions Code § 17200 *et seq.* against all defendants. *Id.* ¶¶ 146–157, 170–174. Finally, Panthera alleges aiding and abetting fraud against KR Logistics and Kasgro Rail Car Management. ¶¶ 162–169.

Defendants moved to dismiss the complaint, arguing, *inter alia*, that the Court lacks personal jurisdiction over defendants.

## LEGAL STANDARD

Personal jurisdiction over a non-resident defendant may exist if the defendant has either a continuous and systematic presence in the state (general jurisdiction), or minimum contacts with the forum state such that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice" (specific jurisdiction). *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (citation omitted). Where there is no federal statute applicable to determine personal jurisdiction, a district court should apply the law of the state where the court sits. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). California's long-arm statute only requires that the exercise of personal jurisdiction comply with federal due process requirements. *Id.* at 800–01.

In order for a court to exercise specific personal jurisdiction in accordance with due process, a

3

nonresident defendant "must have 'minimum contacts' with the forum state such that the assertion of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006) (quoting *Int'l Shoe Co.*, 326 U.S. at 315). The Ninth Circuit employs a three-part test to determine whether the defendant has minimum contacts with a forum state. *Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997). First, the plaintiff must establish that the defendant either purposefully availed itself of the privilege of conducting activities in the forum state or purposefully directed its activities toward the forum state. *Schwarzenegger*, 374 F.3d at 802. Second, the claim must "arise[] out of or result[] from the defendant's forum-related activities," and third, the exercise of personal jurisdiction over the defendant must be reasonable. *Pebble Beach Co.*, 453 F.3d at 1155. The plaintiff bears the burden of proving the first two conditions. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). If the plaintiff carries this burden, "the defendant must come forward with a 'compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).

If a district court acts on the defendant's motion to dismiss without holding an evidentiary hearing, the plaintiff "need only demonstrate facts that if true would support jurisdiction over the defendant." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1129 (9th Cir. 2003) (citation omitted). Unless directly contravened, the plaintiff's version of the facts is taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor for purposes of deciding whether a prima facie case for personal jurisdiction exists. *Id.* (citation omitted).

**DISCUSSION**

**1.  Purposeful Availment and Purposeful Direction Analyses**

In the first part of the minimum contacts inquiry for personal jurisdiction, courts apply a purposeful direction analysis to suits sounding in tort and a purposeful availment analysis to suits sounding in contract. *Schwarzenegger*, 374 F.3d at 802. The parties disagree about which test should be used in this case. Panthera argues that the fraud and other torts directed at Panthera in California justify the application of the purposeful direction analysis and constitute a sufficient basis for personal

jurisdiction over defendants. Panthera's Opp'n to Kasgro's Mot. ("Panthera Opp'n I") at 2–3, Panthera's Opp'n to KR Logistics's Mot. ("Panthera Opp'n II") at 12. Defendants rely on *Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008), to argue that this case sounds primarily in contract and so the Court should determine whether there are sufficient minimum contacts for personal jurisdiction under the purposeful availment standard. Kasgro's Reply Br. at 3, KR Logistics's Reply Br. at 10–11.

In *Boschetto v. Hansing*, the plaintiff, a California resident, purchased a car on eBay from a company in Wisconsin. 539 F.3d at 1018. The plaintiff discovered various problems with the car and deviations from how it was advertised. *Id.* at 1015. The plaintiff brought four state law causes of action including breach of contract, misrepresentation, fraud, and violation of a consumer protection law against the seller. *Id.* The court characterized the case as sounding primarily in contract and applied a purposeful availment analysis; even though there were also tort claims, those were premised on the contract. *Id.* at 1016. Similarly, in *Sher v. Johnson*, 911 F.2d 1357, 1362 (9th Cir. 1990), the Ninth Circuit applied a purposeful availment analysis to a complaint alleging both contract and tort claims in a legal malpractice suit. In conducting the purposeful availment analysis, the court found that, "[a]lthough some of [plaintiff's] claims sound in tort, all arise out of [plaintiff's] contractual relationship with the defendants." *Id.* at 1362; *see also*, *HK China Grp. v. Beijing United Auto. & Motorcycle Mfg. Corp.*, 417 F. App'x 664, 665-66 (9th Cir. 2011) (applying a purposeful availment analysis to a suit in which the plaintiff alleged both fraud and breach of contract because it found that the case sounded primarily in contract when "the alleged fraud is merely the representation in the contract that gave rise to the breach").

Here, as in *Sher*, all of the tort claims arise out of Panthera's contractual relationship with defendants. In addition to the breach of contract claims, Panthera has alleged six tort claims including intentional interference with prospective economic advantage, negligent interference with prospective economic advantage, fraud, negligent misrepresentation, aiding and abetting fraud, and unfair business practices in violation of California Business & Professions Code § 17200 *et seq.*

The alleged torts of intentional and negligent interference with prospective economic advantage arise out of the parties' contract. The tort of intentional interference with prospective economic advantage requires the plaintiff to "plead and prove as part of its case-in-chief that the defendant not

5

only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 395 (1995). Here, Panthera alleges that Kasgro's actions were wrongful because they violated the 2005 Revised Lease. FAC ¶ 130. In this way, the tort claim arises out of the contractual relationship. Similarly, negligent interference with prospective economic advantage "arises only when the defendant owes the plaintiff a duty of care." *Lange v. TIG Ins. Co.*, 68 Cal. App. 4th 1179, 1187 (1998) (quotation omitted). Here, Panthera alleged that the "defendants owed a duty of care to Plaintiff by virtue of the restrictions and covenants contained in the 2005 Revised Lease and the Notice of Acknowledgment signed by the parties in 2011." FAC ¶ 141. This tort claim also exists only because of the parties' contractual relationship.

The fraud, negligent misrepresentation, aiding and abetting fraud, and unfair business practices claims similarly arise out of the parties' contractual relationship. In support of the fraud and negligent misrepresentation claims, Panthera alleges that Kasgro made a false representation that "no defaults or breaches of any representations, warranties or covenants or Events of Default under the 1997 Lease or the 2005 Revised Lease had occurred or were continuing." *Id.* ¶ 148. Like the fraud in *HK China Group*, the alleged fraud here ultimately relies on the same provisions in the contract that give rise to the breach of contract claim. Similarly, Panthera's aiding and abetting fraud claim alleges that KR Logistics and Kasgro Rail Car Management "were used to hide the above described violations of the 2005 Revised Lease from Panthera and the other lessors." *Id.* ¶ 163. These allegations make it clear that Panthera's tort claims emanate from the parties' contractual relationship. Finally, Panthera's claim of unfair business practices relies on all of the tort claims above, and so also ultimately arises out of the parties' contractual relationship. *Id.* ¶ 172 ("In committing the tortious conduct identified in this Complaint, Defendants engaged in unlawful, fraudulent and unfair business practices.")

Because all of the tort claims arise out of the parties' contractual relationship, this case sounds primarily in contract and the Court will determine if there specific personal jurisdiction based on the purposeful availment analysis.

6

### 2. **Application of the Purposeful Availment Analysis**

Under the purposeful availment analysis, the inquiry is "whether a defendant purposefully avails itself of the privilege of conducting activities or consummates a transaction in the forum, focusing on activities such as delivering goods or executing a contract." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (internal quotation marks, brackets, and citation omitted); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (quoting *Travelers Health Assn. v. Virginia*, 339 U.S. 643, 647 (1950)) (" . . . with respect to interstate contractual obligations . . . parties who 'reach out beyond one state and create continuing relationships and obligations with citizens of another state' are subject to regulation and sanctions in the other State for the consequences of their activities."). In *Sinatra v. National Enquirer*, 854 F.2d 1191, 1195 (1988), the Ninth Circuit explained that courts applying a purposeful availment analysis must examine whether defendant's contacts with the forum are attributable to its own actions, or are solely attributable to the actions of the plaintiff; and whether the defendant performed affirmative conduct to promote the transaction of business within the forum.

Panthera argues that there is personal jurisdiction over defendants for three reasons: some of the rail cars purchased by Panthera were present in and operated in California; Kasgro made rent payments for the rail cars to Panthera's bank account in California; and Panthera was contacted and ultimately harmed in its principal place of business, California.[1] *See* FAC ¶ 62.

These actions constitute insufficient contacts for personal jurisdiction under the purposeful availment analysis. First, although some of the Rail Cars purchased may have been present in California, they are not the subject of the dispute; the contract is. Also, because Kasgro subleased the rail cars to different end users, there is no indication – and certainly no allegation -- that defendants themselves operated the rail cars in California. Rail cars necessarily cross into many states, but their mere presence is insufficient to show purposeful availment. *See Yahoo!*, 433 F.3d at 1206 (holding that the purposeful availment test focuses on activities such as delivering goods or executing a contract); *see*

---

[1] Panthera argues primarily that defendants' contacts meet the purposeful direction analysis applied in tort cases; Panthera does not specifically address whether or how defendants' contacts would meet the purposeful availment analysis. Panthera Opp'n I at 3-5, Panthera Opp'n II at 13-14.

*also Soo Line R. Co. v. Hawker Siddeley Canada, Inc.*, 950 F.2d 526, 529 (8th Cir. 1991) (rejecting the plaintiff's similar argument because to hold otherwise "would subject [defendant] to suit anywhere its customers use its railcars").

Second, although Kasgro did pay rent to Panthera's San Francisco bank account, this contact does not rise to the level of purposeful availment. To show purposeful availment, Panthera must show that Kasgro reached out beyond its state and created continuing obligations in California. However, the payment in San Francisco was a requirement instituted by Panthera, not imposed by Kasgro. Thus, it is a product of Panthera's actions and not Kasgro's affirmative conduct in reaching out to avail itself of the protections afforded by a bank account in San Francisco. *See Sinatra*, 854 F.2d at 1195.

Finally, the fact that Panthera's principal place of business is in California is insufficient to show that defendants purposefully availed themselves of the privilege of conducting business activities within California. Defendants are Pennsylvania and Wisconsin companies. They did not seek out a business relationship with Panthera. Instead, they initially leased the Rail Cars from CLC Equipment Company, which then sold its interest to Railroad Technology Corp. It was only when Railroad Technology Corp. sold its interest to Panthera that a contractual relationship formed between Panthera and Kasgro. When Kasgro first entered into its lease with CLC Equipment Company, Kasgro had no reason to anticipate being haled into court in California. Thus, the contract was not the product of Kasgro reaching into California to form a business relationship, but Panthera acquiring ownership of the Rail Cars from Railroad Technology Corp. Moreover, the contacts that Kasgro did have with Panthera once Panthera owned the rights to the Rail Cars, such as the acknowledgment sent to Panthera by Kasgro in 2011 and the communications regarding the purchase of the GE cars, also do not rise to the level of purposeful activity. The Ninth Circuit has "concluded that ordinarily use of the mails, telephone, or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the forum state." *Roth v. Garcia Marquez*, 942 F.2d 617, 622 (1991) (quotation omitted).

Accordingly, the Court finds that because there are not minimum contacts with the forum state, it lacks personal jurisdiction over defendants. Under these circumstances, the Court need not address the latter two prongs of the *Cybersell* test.

### 3. Transfer

Once a Court determines that it lacks personal jurisdiction it may dismiss the case or, in the interest of justice, transfer the case. *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of 28 U.S.C. § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not."); *see also Reed v. Brown*, 623 F. Supp. 342, 346 (D. Nev. 1985) (courts may transfer under § 1404(a) even where personal jurisdiction is lacking); *Kawamoto v. CB Richard Ellis, Inc.*, 225 F. Supp. 2d 1209, 1211 (D. Haw. 2002).

The Court finds that transfer is appropriate here. The Kasgro defendants and KR Logistics request, in the alternative to dismissal, that this case be transferred to the Western District of Pennsylvania. Transferring the case, instead of dismissing it, will also obviate the need for Panthera to pay a second set of filing fees. Additionally, most of the events giving rise to this lawsuit occurred in Pennsylvania, and Pennsylvania is a more convenient location for all of the defendants, many of the witnesses, and has a greater ease of access to evidence.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS defendants' motions to dismiss for lack of personal jurisdiction and TRANSFERS the action to the Western District of Pennsylvania. 28 U.S.C. § 1631. This resolves Docket Nos. 38 & 40.

**IT IS SO ORDERED.**

Dated: May 13, 2013

SUSAN ILLSTON
United States District Judge

9