**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| PANTHERA RAIL CAR LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 13-679 |
| | ) | Judge Nora Barry Fischer |
| KASGRO RAIL CORPORATION, a | ) | |
| Pennsylvania corporation, KASGRO | ) | |
| LEASING, LLC, KR LOGISTICS, LLC, and | ) | |
| KASGRO RAIL CAR MANAGEMENT, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

## I.    INTRODUCTION

This case involves multiple claims brought by Panthera Rail Car LLC ("Panthera") against Defendants KR Logistics, LLC ("KRL"), Kasgro Leasing, LLC ("Kasgro Leasing"), Kasgro Rail Car Management, LLC ("KRCM"), and Kasgro Rail Corporation ("Kasgro Rail"). (Docket No. 106). The Court ruled on KRL's previous motion to dismiss Panthera's First Amended Complaint ("FAC") in an Opinion dated August 21, 2013 ("August Opinion"). (Docket No. 105 at 1–9). The factual background of this case was reviewed extensively in the August Opinion, and the Court need not fully restate all of the facts. (*Id.* at 3–9).

In that ruling, the Court conducted choice-of-law analysis with respect to each of Panthera's claims against KRL, (*Id.* at 10–24), and granted KRL's motion, without prejudice, under Federal Rule of Civil Procedure 12(b)(6). (*Id.* at 31). Panthera added new allegations to its Second Amended Complaint ("SAC"), (Docket No. 106), which are described in further detail below.

1

Presently before the Court are two Motions to Dismiss Panthera's SAC (Docket No. 106), filed by KRL (Docket No. 113) and the Kasgro Defendants (Docket No. 115). These matters having been fully briefed (Docket Nos. 114, 116, 126, 127, 129, 130) are now ripe for review.

## II. KRL'S MOTION TO DISMISS

In the August Opinion, the Court found the following with respect to the choice of law governing Panthera's claims against KRL:

1. Alter Ego Liability is governed by Wisconsin law because KRL was incorporated in Wisconsin. (Docket No. 105 at 11–12).

2. The laws of the potentially governing states are the same as to Fraud, Aiding and Abetting Fraud, and Civil Conspiracy, and so the Court chose to apply California law "[f]or the sake of consistency." (*Id.* at 24).

3. The Unfair Competition claim is governed by California law, based on Pennsylvania's choice of law analysis finding that the parties' most significant relationship was to California. (*Id.*).

Panthera added an additional claim for Civil Conspiracy against KRL in its SAC. (Docket No. 106 at 45–46). Although the Court did not address the choice of law for this claim in the August Opinion, the parties agree that there is no actual conflict as to the laws in the potentially applicable states. (Docket No. 114 at 4–5; Docket No. 126 at 5). Given that the laws of the potentially interested states could be applied interchangeably, the Court will apply California law for the sake of consistency. (Docket No. 105 at 24).

### A. Legal Standard

KRL moved to dismiss Panthera's SAC under Federal Rule of Civil Procedure 12(b)(6). (Docket No. 113). Rule 12(b)(6) empowers a district court to dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint is facially plausible if it alleges sufficient "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, the court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678.

In addition to pleading adequate factual content, the complaint also must be legally sufficient. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. To determine the complaint's legal sufficiency, the court must accept as true all of the facts, but not the legal conclusions, alleged, draw all reasonable inferences in the plaintiff's favor, and confirm that the accepted-as-true facts actually give rise to a claim that would entitle the plaintiff to relief. *Id*.; *Inv. Syndicate of Am., Inc. v. City of Indian Rocks Beach*, 434 F.2d 871, 876 (5th Cir. 1970) (standard posed under Rule 12(b)(6), like its common law antecessor, the demurrer, is "if every fact alleged by the opposite party be taken as established, the pleader is still entitled to no relief against me").

A court may not dismiss the complaint merely because it appears that the plaintiff cannot prove the facts alleged or will not ultimately prevail on the merits. *Twombly*, 550 U.S. at 556, 563 n.8. Instead, it must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id*. at 556. The motion to dismiss should not be granted if the plaintiff alleges facts which could, if established at trial, entitle him to relief. *Id*. at 563 n.8. In ruling on the motion, a court may consider only the complaint, attached exhibits, matters of public record, and undisputedly authentic documents not attached to the complaint if the complainant's claims are based on those documents. *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). In considering external yet undisputedly relevant and authentic

documents, the court need not convert the motion to dismiss into a motion for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

**B.    Sufficiency of Panthera's Second Amended Complaint**

1.    Alter Ego Liability

As detailed in the Court's August Opinion, Wisconsin uses a two-pronged test to establish alter-ego liability: formalities and fairness. (Docket No. 105 at 24–25). This is an equitable doctrine that is applied with the trial court's discretion. *CB Distributors, Inc. v. Laurel Mountain Sales, Inc.*, 709 N.W.2d 112, 2005 WL 3543615, at *3 (Wis. Ct. App. Dec. 29, 2005) (citing *Consumer's Co-op. of Walworth Cnty. v. Olsen*, 142 Wis.2d 465, 472–73, 419 N.W.2d 211 (Wis. Ct. App. 1988)). The remedy can be used to reach the controlled entity's assets, as Panthera attempts here. *Select Creations, Inc. v. Paliafito Am., Inc.*, 852 F. Supp. 740, 774 (E.D. Wis. 1994).

In the August Opinion, the Court found that Panthera's FAC sufficiently alleged facts supporting the fairness requirement, in that Panthera averred that "KRL was . . . established for the purpose of hiding transactions and profits from the lessors of the Kasgro Entities, as demonstrated by the fact that Panthera was neither alerted nor received profits from the assignment of the Westinghouse Lease and at least one other leasing deal." (Docket No. 105 at 27 n.19) (citations omitted). However, the Court granted KRL's motion to dismiss because, with respect to the formalities requirement, the Court concluded that Panthera had not shown that KRL lacked a separate and independent existence, and was the mere instrumentality of the shareholders. (*Id.* at 25).

In its SAC, Panthera adds substantial new allegations indicating that KRL is an alter ego of the Kasgro Entities:

- KRL's eight founding members "all are key players with the Kasgro Entities," as each of these members is "either: an owner, director, officer, and/or shareholder of Kasgro Rail; a member of Kasgro Leasing; and/or an officer or member of Kasgro Rail's parent, Antietam, LLC ('Antietam')." (Docket No. 106 at 3–4, ¶ 9). As such, KRL's founding members had knowledge of the conditions imposed on the Kasgro Entities by the 2005 Revised Lease, as well as the Kasgro Entities' responsibilities under the Revised Lease. (*Id.* at 4–5, ¶¶ 12–13).

- KRL's registered address in Pennsylvania is the same business address used by the Kasgro Entities. (*Id.* at 4, ¶ 10). Similarly, KRL's business address in Wisconsin is the same address as used by Kasgro Rail's parent, Antietam. (*Id.* at 4, ¶ 11).

- KRL's only transactions or business activities have been with Kasgro Entities or its former insiders. (*Id.* at 5, ¶ 14).

- KRL observed no corporate formalities when it was assigned the Westinghouse Lease from the Kasgro Entities, with no consideration paid. (*Id.* at ¶ 16).

- The timeline of events—beginning with KRCM entering into a Purchase Order Lease Agreement with Westinghouse on March 30, 2011 for rail cars to be delivered on January 2, 2012 and in violation of the 2005 Lease Agreement, through controlling members of the Kasgro Entities founding KRL on November 17, 2011, and KRL receiving $1.4 million in proceeds in relation to the Westinghouse lease on December 13, 2011—indicates that KRL was formed "for the purpose of, and participation in, the Kasgro Entities' fraudulent schemes." (*Id.* at 25–27, ¶¶ 110–11).

In light of these additions to the SAC, Panthera contends that its pleadings survive under Rule 12(b)(6). (Docket No. 126 at 9–11).

KRL argues that the SAC fails to rectify the deficiencies the Court found in the FAC with respect to the formalities requirement. (Docket No. 129 at 3–9). KRL describes the SAC as containing more "conclusory statements without factual support." (Docket No. 114 at 7). KRL further characterizes the SAC as bolstering the fairness prong of the alter ego test, which it argues cannot affect the outcome of this theory because the formalities prong remains inadequate. (*Id.* at 8). Regarding the assignment of the Westinghouse Lease, KRL suggests that these facts actually evidence the distinct nature of these KRL and the Kasgro Entities: "the fact that a formal assignment took place and is documented only further supports the fact that KR Logistics and the Kasgro Entities obeyed and respected corporate formalities." (Docket No. 129 at 5).

Despite KRL's arguments, the Court finds that Panthera has alleged sufficient facts to state a plausible claim under the alter ego doctrine in this case. Specifically, Panthera's reference to the common parties controlling KRL and the Kasgro Entities, combined with the timeline of events, is compelling. The SAC's version of events supports Panthera's theory that KRL was formed simply to assist the Kasgro Entities in avoiding their lease obligations. (Docket No. 106 at 25, ¶ 111). Under Wisconsin law, the alter ego doctrine is "particularly appropriate" in such cases, where an entity is used "to hide assets or secretly to conduct business to avoid the pre-existing liability of the controlling party." *Select Creations*, 852 F. Supp. at 774.

Panthera's averments related to common ownership, taken as true, are also persuasive indications that the entities shared such a unity of interest and ownership that the Kasgro Entities exercised complete control over KRL. *Discovery Technologies, Inc. v. AvidCare Corp.*, 2005 WI App 59, 280 Wis. 2d 557, 694 N.W.2d 509, 2005 WL 350438, at *4 (Wis. Ct. App. 2005). Panthera paints a picture wherein the Kasgro Entities, attempting to avoid their obligations to

Panthera, decided to form a new company that would not be expressly bound to the Panthera lease. (Docket No. 106 at 5, ¶ 13). Furthermore, Panthera alleges that KRL conducted no business other than transactions related to the Kasgro Entities, such as the Westinghouse lease. (*Id.* at 5–6 ¶¶ 13–15). These allegations evidence a lack of formalities; essentially, KRL was a separate entity only in the most technical of senses. 1 FLETCHER CYC. CORP. § 43 (2013) ("The control necessary to invoke the "instrumentality rule" is not mere majority or complete stock control, but such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal."). Its founding members were "non-functioning" in the sense that they wore their "Kasgro" hats even while managing KRL. *See Discovery Technologies, Inc.*, 2005 WL 350438, at *4 (determining whether the formalities requirement is met by looking to the extent of control and dominance exercised over the subsidiary). In this light, KRL can be seen as a sham corporation.

Moreover, KRL mischaracterizes Wisconsin law when it argues that the SAC's alter ego claims should be dismissed because they merely add more allegations going to fairness rather than to formalities. (Docket No. 114 at 8). The test for this equitable doctrine is less rigid than KRL would have. *See Consumer's Co-op.*, 142 Wis.2d 465 at 485, 419 N.W.2d 211 ("[B]ecause of the equitable nature of this remedy, flexibility must be maintained."). Given that Panthera's SAC—taken as true—satisfies the formalities prong, fairness again becomes relevant in that the Court must decide whether, in its discretion, the alter ego theory should be applied. *CB Distributors*, 2005 WL 3543615, at *3. In this case, the Court finds the fairness prong

particularly compelling,[1] and therefore concludes that Panthera has stated plausible grounds for applying the alter ego doctrine.

## 2. Common Law Fraud

California law allows a cause of action for common law fraudulent concealment by showing: "(1) the defendant must have concealed or suppressed a material fact, (2) the defendant must have been under a duty to disclose the fact to the plaintiff, (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff must have been unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff must have sustained damage." *Lovejoy v. AT&T Corp.*, 111 Cal. Rptr. 2d 711, 719 (Cal. Ct. App. 2001) (quoting *Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 7 Cal. Rptr. 2d 859, 864 (Cal. Ct. App. 1992)).

The Court dismissed Panthera's common law fraud claim in its FAC, explaining that this decision was compelled by the Court's ruling on the alter ego claim. (Docket No. 105 at 28–29). KRL's arguments with respect to the SAC similarly center on the viability of the alter ego theory, and provide no arguments as to why this claim should be dismissed if the Court finds that Panthera may proceed on the alter ego theory. (Docket No. 114 at 8–9; Docket No. 129 at 8). Having found that the SAC sufficiently pleads the alter ego theory, KRL's arguments cannot stand.

Additionally, the Court finds that the SAC meets the special pleading requirements under

---

[1] Given that KRL is a closely held company whose directors interlock with the Kasgro Entities, and considering that discovery has not yet concluded, the Court agrees with Panthera that the SAC's claims relying on an alter ego theory should not be dismissed at this stage. (Docket No. 126, at 2).

Federal Rule of Civil Procedure 9(b). When pleading fraud, the plaintiff must "state with particularity the circumstances constituting fraud, including the 'who, what, when, where, and how' of the charged misconduct." *Walsh v. Kindred Healthcare*, 798 F. Supp. 2d 1073, 1081 (N.D. Cal. 2011). To this end, the SAC asserts that KRL knew that by taking over the Westinghouse Lease, it would enable the Kasgro Entities to divert $1.4 million that the Kasgro Entities would have otherwise received, shielding this sum from being included in the 2011 Excess Profit Certification. (Docket No. 106 at 4–5, ¶ 12). This pleading requirement is also satisfied because Panthera has put KRL on notice of the nature and circumstances of the fraud alleged, such that KRL will be able to answer and defend against this claim. *Walsh*, 798 F. Supp. 2d at 1081 (citing *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir.1989)); *Nielson v. Union Bank of California, N.A.*, 290 F. Supp. 2d 1101, 1141–42 (C.D. Cal. 2003). Therefore, the SAC sufficiently pleads a plausible claim for fraud.

### 3. Aiding and Abetting Fraud

California follows the Second Restatement of Torts with respect to civil claims for aiding and abetting fraud. *Casey v. U.S. Bank Nat'l Ass'n*, 26 Cal. Rptr. 3d 401, 405 (Cal. Ct. App. 2005). A defendant is subject to liability for the tortious action of another in three circumstances:

> For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he
> (a) does a tortious act in concert with the other or pursuant to a common design with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and his own conduct, separately considered, constitutes a breach of duty to the third person.

RESTATEMENT (SECOND) OF TORTS § 876.

Panthera brings this claim against KRL and KRCM. (Docket No. 106 at 43). With respect to KRL, Panthera asserts that KRL knowingly gave substantial assistance to the Kasgro Entities' efforts to fraudulently conceal breaches of the 2005 Revised Lease by taking over the Westinghouse Lease, permitting the Kasgro Entities "to divert lease revenues and funds to KR Logistics and to present materially inaccurate excess rent certifications to their lessors, wherein they misrepresented and understated the excess rent owed to their lessors under the profit sharing agreement," thereby defrauding their lessors. (*Id.* at 44–45, ¶¶ 198–201).

Initially, KRL argues that it cannot be found to have aided or abetted any purported fraud committed through false representations made by the Kasgro Entities in their Acknowledgement, because these representations were made months before KRL was formed. (Docket No. 114 at 9). Next, KRL argues that Panthera has failed to make out a claim related to its theory of an ongoing fraudulent concealment because Panthera failed to plead facts indicating the "substantial assistance" element or duty owed. (*Id.* at 10–11; Docket No. 129 at 10).

The pertinent legal standard provides three separate avenues for making out a claim of aiding and abetting a tort. RESTATEMENT (SECOND) OF TORTS § 876(a)–(c). Although Panthera does not expressly spell out which of these three theories it intends to pursue,[2] the Court finds that the SAC sufficiently pleads facts that would meet the standard in subsection (b). To this end, Panthera avers that KRL's controlling members and agents, for whose acts KRL is vicariously liable, knew that the Kasgro Entities were actively breaching the duties they owed to Panthera. (Docket No. 106 at 43–44, ¶¶ 195–98). Panthera further pleads that KRL substantially assisted the Kasgro Entities' breach of their duties to Panthera by taking over the Westinghouse Lease,

---

[2] The Court notes that Panthera is permitted to plead alternative theories of relief. FED. R. CIV. P. 8(d)(2).

thereby hiding the fraud from the Kasgro Entities' public filings and from Panthera. (*Id.*).

The Court also notes that KRL's arguments with respect to this claim misconstrue the law. At the outset, KRL argues that Panthera's claim must be dismissed because it failed to plead that KRL independently owed a duty to Panthera. (Docket No. 114 at 10; Docket No. 129 at 10). KRL misstates the legal standard as requiring a showing both that KRL substantially assisted the Kasgro Entities' tort, *and* that KRL "separately considered, had a duty to Panthera that was breached." (Docket No. 129 at 10) This standard is simply incorrect. *Nielson*, 290 F. Supp. 2d at 1133 ("No California case . . . holds that a party must owe the plaintiff a duty before he or she can be held liable as an aider and abettor."). Panthera is not required to establish that KRL owed an independent duty under § 876(c) if Panthera instead establishes that KRL acted in concert with the Kasgro Entities to commit a tort under § 876(a) or that KRL substantially assisted the Kasgro Entities in violating a duty owed by the Kasgro Entities under § 876(b). *Id.*

KRL also appears to confuse the different requirements as to "duty" under subsections (b) and (c). The plain language of the Restatement indicates that under subsection (b), the duty at issue would refer to a duty that the Kasgro Entities owed, whereas subsection (c) would implicate a duty that KRL owed. *Compare* § 876(b) ("the other's conduct constitutes a breach of duty"), *with* § 876(c) ("his own conduct, separately considered, constitutes a breach of duty to the third person"). KRL overrides this distinction when it argues that Panthera cannot make out a claim under subsection (b) because it "failed again to set forth a duty that KR Logistics owed to Panthera." (Docket No. 114 at 11). As explained, subsection (b) does not require such a showing, and so KRL's argument fails as a matter of law. *Neilson*, 290 F. Supp. 2d at 1134 ("[T]he act of aiding and abetting is distinct from the primary violation; liability attaches because the aider and abettor behaves in a manner that enables the primary violator to commit the underlying tort.").

KRL's next argument is that Panthera has not sufficiently pled "substantial assistance" because it relies on conclusory allegations. (Docket No. 114 at 10–11). The SAC, however, adds averments that KRL's controlling members formed the company for the specific purpose of helping the Kasgro Entities conceal their breach of the 2005 Lease, diverting profits that Panthera otherwise would have received. (Docket No. 106 at 30, ¶ 121). Further, KRL's formation was the *sine qua non* of the Kasgro Entities' allegedly ongoing fraudulent concealment of their breach because KRL took over the Westinghouse Lease "knowing that it was acting as a sham lessor," thereby making it possible for the Kasgro Entities to omit the Westinghouse transaction from its public filings. (*Id.* at 44–45, ¶ 200).

Thus, the Court denies KRL's motion with respect to the aiding and abetting claim because Panthera sufficiently pled that KRL was a key player in the Kasgro Entities' purported fraud, concealing the contract breach and creating a false sense of security on Panthera's part. (*Id.*). These pleadings are sufficient in this Court's estimation to plausibly show the "substantial assistance" element of § 876(b) under the Restatement. *Neilson*, 290 F. Supp. 2d at 1132.

### 4.  Civil Conspiracy

Civil conspiracy is a doctrine that allows plaintiffs to impose liability on all persons who, "although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration." *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 869 P.2d 454, 454 (Cal. 1994). Each member of the conspiracy is rendered liable for the entire amount of damage caused by the tort. *Id.* at 508. In order to invoke this doctrine, a plaintiff must show "(1) the formation and operation of the conspiracy; (2) the wrongful act or acts done pursuant thereto; and (3) the damage resulting." *Mosier v. S. Cal. Physicians Ins. Exch.*, 63 Cal.

App. 4th 1022, 1048 (Cal. Ct. App. 1998). [3]

KRL makes several arguments as to why this claim should be dismissed under 12(b)(6). At the outset, KRL argues that Panthera failed to plead that KRL committed the underlying tort of fraud. (Docket No. 114 at 12). Panthera responds by characterizing KRL's argument as essentially renewing its prior arguments that Panthera failed to portray an alter ego theory of liability, implying that the sufficiency of the civil conspiracy claim turns in lock-step with the alter ego allegation. (Docket No. 126 at 15).

The Court, however, agrees with KRL that the claim for civil conspiracy fails under the standard of Rule 12(b)(6). Panthera's theories regarding fraud do not include any allegations that KRL violated an independently owed duty or committed an independent tort. Rather, Panthera's fraud claims against KRL are based on KRL being an alter ego of the Kasgro Entities. (*Id.* at 11–14). Regardless of whether Panthera ultimately succeeds in proving that KRL was an alter ego of the Kasgro Entities, the civil conspiracy claim fails.

First, if Panthera proves that the alter ego doctrine applies, then it cannot make out a claim for civil conspiracy because an alter ego cannot conspire with itself. *See Qwest Commc'ns Corp. v. Herakles, LLC*, Civ. A. No. 07-00393, 2008 WL 783347, at *14 (E.D. Cal. Mar. 20, 2008) ("Nevertheless, it is logical that a party cannot conspire with itself."); *Webber v. Inland Empire Inv.*, 74 Cal.App.4th 884, 910, 88 Cal.Rptr.2d 594 (Cal. Ct. App. 1999) ("If [the

_____

[3] As the parties noted in their briefings, Pennsylvania law is essentially the same. "To make out a cause of action for civil conspiracy under Pennsylvania law, a plaintiff must establish: (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuance of the common purpose, and (3) actual legal damage." *Oldcastle Precast, Inc. v. VPMC, Ltd.*, CIV.A. 12-6270, 2013 WL 1952090, at *13 (E.D. Pa. May 13, 2013) (citing *Skipworth by Williams v. Lead Indus. Ass'n, Inc.*, 547 Pa. 224, 690 A.2d 169, 174 (Pa.1997); *Kline v. Sec. Guards, Inc.*, 386 F.3d 246, 262 (3d Cir.2004)).

defendant] was the alter ego of all the corporations, there could be no coconspirators.").

Second, if Panthera does not prove that KRL is the Kasgro Entities' alter ego, then the civil conspiracy claim fails because the SAC does not sufficiently allege that KRL owed Panthera an independent duty. *Applied Equip. Corp.*, 7 Cal.4th at 511, 869 P.2d at 454 ("[T]ort liability arising from conspiracy presupposes that the coconspirator is legally capable of committing the tort, i.e., that he or she owes a duty to plaintiff recognized by law and is potentially subject to liability for breach of that duty."). Therefore, Panthera's civil conspiracy claim against KRL will be dismissed.[4]

### 5.  Unfair Competition

California law provides a statutory cause of action for unfair competition. CAL. BUS. & PROF. CODE § 17200, *et seq.* To state a claim, a plaintiff must plead that: (1) defendant engaged in one of the practices prohibited by the statute; and (2) plaintiff suffered actual injury in fact as a result of defendant's actions. *Roling v. E*Trade Sec., LLC*, 756 F. Supp. 2d 1179, 1192 (N.D. Cal. 2010). The prohibited practices targeted by the California Code are broad, "borrowing" violations of other laws and making them independently actionable as unfair competitive business practices. *Theme Promotions, Inc. v. News Am. Marketing FSI*, 546 F.3d 991, 1008 (9th Cir. 2008). Virtually any law, federal, state or local, can serve as a predicate for an action under the UCL. *Troyk v. Farmers Grp., Inc.*, 168 Cal.App.4th 1337, 86 Cal.Rptr.3d 416, 440–41 (Cal. Ct. App. 2008).

Panthera contends that KRL is liable under this statute because of the fraud KRL allegedly committed through acting as the Kasgro Entities' alter ego. (Docket No. 106 at 47,

---

[4] Panthera may be able to amend its pleading to conform to the evidence. *See* FED. R. CIV. P. 15; (Case Management Order, Docket No. 96 at 3–4, ¶ 8).

¶ 212). In the August Opinion, the Court dismissed Panthera's unfair competition claim based on its failure to make out a plausible claim applying the alter ego doctrine, upon which Panthera's allegations of fraud relied. (Docket No. 105 at 31). KRL argues now that the SAC's unfair competition claim should similarly be dismissed because Panthera failed to adequately plead alter ego liability. (Docket No. 114 at 15; Docket No. 129 at 10).

Based on the Court's finding that Panthera has made out a claim for fraud, KRL's arguments with respect to the unfair competition claim are now moot. Hence, this claim will not be dismissed at this stage.

## III. CHOICE OF LAW WITH RESPECT TO THE KASGRO DEFENDANTS

This Court's prior choice of law analysis applied only to KRL's motion to dismiss Panthera's First Amended Complaint. (Docket No. 105 at 10–24). Consequently, the Court has not yet analyzed what law governs Panthera's claims against the Kasgro Defendants.

Panthera brings nine counts against the Kasgro Defendants:

(1) Breach of Contract
(2) Breach of Implied Covenant of Good Faith and Fair Dealing
(3) Intentional Interference with Prospective Economic Advantage
(4) Negligent Interference with Prospective Economic Advantage
(5) Common Law Fraud
(6) Negligent Misrepresentation
(7) Aiding and Abetting Fraud
(8) Civil Conspiracy
(9) Unfair Competition

(Docket No. 106). The Kasgro Defendants move to dismiss Counts 2–9. (Docket No. 115 at 1). Given this Motion, the Court now turns to a discussion of the applicable choice of law.

A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496–97 (1941); *see also Pac. Emp'rs Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 432 (3d Cir. 2012) ("As a federal court

sitting in diversity, we apply the choice-of-law rules of the forum state, which is Pennsylvania in this case.") (citing *Klaxon*). In the event of a transfer from one federal district court to another, however, the applicable choice of law rules depend on the nature of the transfer. Where a case is transferred from one federal court district to another to cure a jurisdictional defect—as is the case here—the transferee court applies the choice of law rules applicable in the forum state. *Lafferty v. St. Riel*, 495 F.3d 72, 77 (3d Cir. 2007) (citations omitted). The choice of law rules of the transferor state do not apply because the court sitting in that state was never a proper forum in the first instance. *Gerena v. Korb*, 617 F.3d 197, 204 (2d Cir. 2010). Thus, the Court applies Pennsylvania's choice of law rules.

### A.    Effect of the Parties' Choice-of-Law Clause

As a preliminary matter, the Court must address the scope and effect of the parties' election of Minnesota law to govern the contract between Panthera and the Kasgro Defendants. (Docket No. 106-1 at 32, § 23(e); Docket No. 106-2 at 10, § 5.3; Docket No. 106-3 at 12, § 9.3). The original lease provided as follows: "This Lease shall be governed by and construed in accordance with the laws of the State of Minnesota." (*Id.*).

The Kasgro Defendants argue extensively that Minnesota law should govern all of Panthera's claims against them, whether sounding in contract or in tort. (Docket No. 116 at 3; Docket No. 130 at 4–7). Accepting this Court's ruling as to the choice of law governing Panthera's claims against KRL, the Kasgro Defendants point out that their relationship with Panthera compels a different result. (*Id.* at 4). That relationship is contractual. (*Id.*). As such, the Kasgro Defendants argue that the contracted-for governing law—Minnesota—should extend to claims arising out of their relationship. (*Id.*).

The parties do not contest that the choice-of-law clause is enforceable and applies to

Panthera's breach of contract claim.[5] (Docket No. 116 at 6; Docket No. 127 at 7). *See also Grimm v. Citibank (S. Dakota), N.A.*, CIV.A. 08-788, 2008 WL 4925631, at *4 (W.D. Pa. Nov. 14, 2008) (Fischer, J. Nora Barry) ("Pennsylvania courts have adopted § 187 of the Restatement (Second) of Conflict of Laws, which generally honors the intent of the contracting parties and enforces choice of law provisions in contracts executed by them.") (citations omitted). Rather, the parties disagree as to the provision's scope, and whether it governs the tort claims. (Docket No. 130 at 4–7; Docket No. 127 at 6–12). This issue has been thoroughly briefed by both parties.

In general, this issue—whether contractual choice-of-law clauses govern torts that later arise related to the contractual relationship—is an unsettled question. *See* Hay, Borchers, & Symeonides, *Conflict of Laws* 1142–46 (5th ed. 2010). Although the majority of cases hold that such a clause only applies to contract disputes, a "sizeable number of cases" hold that these provisions extend to tort claims, as well. *Id.* at 1142–43 (collecting cases).

### 1.    Panthera's Arguments

Panthera asserts that the scope of the contract provision is determined by the forum state's law. (Docket No. 127 at 6–7). Construing the contractual choice-of-law provision as "very narrow," Panthera would cabin the provision to govern only its breach of contract claim. (Docket No. 127, at 6). In support of its arguments, Panthera directs the Court to the following case law. In *Jiffy Lube Int'l, Inc. v. Jiffy Lube of Pa., Inc.*, 848 F. Supp. 569 (E.D. Pa. 1994), the court found that a provision stating "This Agreement shall be construed, interpreted and enforced in accordance with the laws of the State of Maryland," was limited on its face to "this agreement," and therefore "only governs the construction, interpretation and enforcement" of that contract. *Id.* at 576. Similarly, in *Composiflex, Inc. v. Advanced Cardiovascular Sys., Inc.*, 795 F. Supp.

---

[5] This claim is not challenged in the Kasgro Defendants' pending Motion to Dismiss.

151 (W.D. Pa. 1992), the court explained that contractual choice-of-law provisions should be categorized as either "broad" or "narrow," depending on the level of detail in the provision. *Id.* at 157. Broad provisions,[6] in which the language indicates that "the parties intended for the agreement to encompass all elements of their association" may govern tort claims. *Id.* By contrast, narrow provisions are restricted to the parties' contract. *Id.* (citations omitted). Panthera then reasons that, because the choice of law provision at issue in the present case is of the narrow variety, it does not apply to tort claims. (Docket No. 127 at 7).[7]

Panthera reads a prior decision from this Court as supporting this contention. (Docket No. 127 at 8–9). *Grimm*, 2008 WL 4925631. *Grimm* involved a credit card agreement between a consumer and a large national bank that contained a clause selecting South Dakota law to govern "the terms and enforcement of this Agreement." *Id.* at *1, 4. This Court applied the narrow/broad distinction, and concluded that the choice-of-law provision was narrowly drawn because: (1) it resembled provisions that other courts had classified as "narrow;" (2) the language referred only to enforcing the agreement, rather than to governing all matters relating to the parties; and (3) the provision was silent with respect to whether it should apply to a tort claim. *Id.* at *5. Applying the Court's analysis to the present case, the result should be the same.

Panthera further cites to a footnote in *DL Resources, Inc. v. FirstEnergy Solutions Corp.*,

---

[6] Examples of "broad" provisions include: "This Franchise and License Agreement and the construction thereof shall be governed by the laws of the state of Michigan," and "This Agreement shall be construed in accordance with the laws of the State of California as to all matters, including, but not limited to, matters of validity, construction, effect or performance." *Composiflex*, 795 F. Supp. at 157 (citations omitted).

"Narrow" provisions include: "this agreement shall be governed by the laws of the State of New York," and "this agreement shall be construed under the laws of the State of California." *Id.* (citations omitted).

[7] Panthera's argument on this point is one frequently adopted by parties and by courts. *See* Hay, Borchers, & Symeonides, *supra*, at 1144–45.

506 F.3d 209 (3d Cir. 2007) for the proposition that the choice of law analysis for a tort claim is a distinct inquiry from the effect and application of a contractual provision. *Id.* at 216, n.5. In *DL Resources*, the Court of Appeals for the Third Circuit noted that "Although this case contains both contract and tort-based causes of action, each of which requires a separate choice-of-law analysis, our decision renders it unnecessary for us to determine what law governs DL Resources' tort-based claim." *Id.*

Next, Panthera argues that even if the Court accepts the Kasgro Defendants' argument that Minnesota law should govern the scope of the choice-of-law clause, Minnesota case law indicates that the law of the forum governs the clause's scope. *Ceres Envtl. Servs., Inc. v. Arch Specialty Ins. Co.*, 853 F. Supp. 2d 859, 866 (D. Minn. 2012). The *Ceres* court, in turn, relied on a decision from the Second Circuit Court of Appeals, construing New York law. *Id. See also Fin. One Pub. Co. Ltd. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 335 (2d Cir. 2005) ("Under New York law, then, tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract, even when the contract also includes a broader forum-selection clause.").

2.    The Kasgro Defendants' Arguments

The Kasgro Defendants assert that the scope of the choice-of-law clause is determined by the substantive law of the chosen state. (Docket No. 116 at 7). In support, they cite to several cases from other circuits, noting that they have not found any decisions by the Third Circuit Court of Appeals analyzing this issue. (*Id.* at 7, n.3).[8]

_____

[8] On the absence of Pennsylvania law addressing this issue, one state court observed as follows:

> There seems to be no published decision by a Pennsylvania state appellate court addressing whether a contractual choice of law

19

On this point, the Kasgro Defendants question whether the Court should be persuaded by the trial court cases from Pennsylvania district courts. (Docket No. 130 at 6–7). Having reviewed the decisions upon which Panthera relies, as well as the authority relied upon within these decisions, the Kasgro Defendants suggest that case law[9] has become untethered from Pennsylvania law. (*Id.*). Instead, "within the Third Circuit, what little discussion there is of this issue occurs within an echo chamber, with district courts citing other district courts for support

---

provision extends to misrepresentation and tortious interference claims arising from the contracting parties' relationship. One Pennsylvania federal court applying Pennsylvania choice of law rules has held that a choice of law provision does not govern tort claims "unless the fair import of the provision embraces all aspects of the legal relationship." *Jiffy Lube Int'l. Inc. v. Jiffy Lube of Pa., Inc.,* 848 F. Supp. 569, 576 (E.D.Pa.1994). *See also Stone St. Servs., Inc. v. Daniels,* 2000 WL 1909373, at *4 n. 7 (E.D.Pa.); *Coram Healthcare Corp. v. Aetna U.S. Healthcare Inc.,* 94 F.Supp.2d 589, 593 (E.D.Pa.1999). Under the Restatement, however, there seems to be a presumption that a contractual choice of law extends to misrepresentation claims or other claims affecting the validity of the contract. Restatement (Second) of Conflict of Laws §§ 200, 201. *See also Mazzioni Farms, Inc. v. E.I. Du Pont de Nemours & Co.,* 761 So.2d 306, 307 n. 2, 313 (Fla. 2000). The Restatement does not directly address whether a contractual choice of law applies to a tortious interference claim.

*Textile Biocides, Inc. v. Avecia, Inc.*, 52 Pa. D. & C.4th 244, 2001 WL 1855059, at *7 (Com. Pl. 2001). In *Textile*, the court found that there was not an actual conflict, because the two potential tribunals would reach the same result, and so the court did not resolve this issue it identified concerning Pennsylvania law. *Id.*

[9] Specifically, the Kasgro Defendants point out that *Composiflex* cites only decisions from other circuits. 795 F. Supp. 151, 157 (W.D. Pa. 1992). *Jiffy Lube* cites to *Composiflex* and other decisions from the Eastern District of Pennsylvania. 848 F. Supp. at 576. *Coram Healthcare Corp. v. Aetna U.S. Healthcare, Inc.* cites to *Composiflex* and decisions from other circuits. 94 F.Supp.2d 589, 593 (E.D. Pa. 1999). *Wright v. McDonald's Corporation* cites to *Composiflex* and decisions from other circuits. 1993 WL 53582 at *7 n.6 (E.D. Pa. Mar. 2, 1993). *Aamco Transmissions, Inc. v. Marino* was cited in *Jiffy Lube*, but relies on decisions from other circuits. 1992 WL 38120 at *6 n.15 (E.D. Pa. Feb. 20, 1992) (cited in Jiffy Lube) (only citing decisions from other circuits). Finally, *Stillwagon v. Innsbrook Golf & Marina, LLC* cites only to *Jiffy Lube*. 2013 WL 1180312, at *6 n.10 (W.D. Pa. Mar. 20, 2013).

and calling it Pennsylvania law." (*Id.*). The Kasgro Defendants point out that Panthera cited no authoritative Pennsylvania case law that would apply Pennsylvania law to resolve the scope of this choice-of-law provision. (*Id.* at 7). For their part, the Kasgro Defendants also fail to cite Pennsylvania cases that would support their approach. Rather, the Kasgro Defendants caution the Court against "creating federal common law." (*Id.* at 6).

Directing the Court to consider rulings from outside this Commonwealth, the Kasgro Defendants urge that other circuit courts have concluded that choice-of-law provisions can encompass more than just contractual claims. (Docket No. 116 at 7) (collecting cases). For example, the Court of Appeals for the Eighth Circuit has applied an approach looking to whether the actions underlying the tort claims are closely related to the contract. *Nw. Airlines, Inc. v. Astraea Aviation Servs., Inc.*, 111 F.3d 1386, 1392 (8th Cir. 1997). The Kasgro Defendants argue that this test should apply to the present case and would produce a fair result, given that "Panthera's agreement with Kasgro is the *sine qua non* of all of Panthera's claims." (Docket No. 116 at 8).

Similarly, the California Supreme Court squarely addressed this issue, holding that: "a valid choice-of-law clause, which provides that a specified body of law 'governs' the 'agreement' between the parties, encompasses all causes of action arising from or related to that agreement, regardless of how they are characterized, including tortious breaches of duties emanating from the agreement or the legal relationships it creates." *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 470, 834 P.2d 1148, 1155 (Cal. 1992). The court's reasoning keyed in on the contractual setting, which involved sophisticated parties negotiating at arm's length, similar to the instant suit.

When two sophisticated, commercial entities agree to a choice-of-

law clause like the one in this case, the most reasonable interpretation of their actions is that they intended for the clause to apply to all causes of action arising from or related to their contract. Initially, such an interpretation is supported by the plain meaning of the language used by the parties. The choice-of-law clause in the shareholders' agreement provides: "This agreement shall be *governed by* and construed in accordance with Hong Kong law and each party hereby irrevocably submits to the non-exclusive jurisdiction and service of process of the Hong Kong courts."

The phrase "governed by" is a broad one signifying a relationship of absolute direction, control, and restraint. Thus, the clause reflects the parties' clear contemplation that "the agreement" is to be completely and absolutely controlled by Hong Kong law. No exceptions are provided.

Our conclusion in this regard comports with common sense and commercial reality. When a rational businessperson enters into an agreement establishing a transaction or relationship and provides that disputes arising from the agreement shall be governed by the law of an identified jurisdiction, the logical conclusion is that he or she intended that law to apply to *all* disputes arising out of the transaction or relationship. We seriously doubt that any rational businessperson, attempting to provide by contract for an efficient and businesslike resolution of possible future disputes, would intend that the laws of multiple jurisdictions would apply to a single controversy having its origin in a single, contract-based relationship. Nor do we believe such a person would reasonably desire a protracted litigation battle concerning only the threshold question of what law was to be applied to which asserted claims or issues. Indeed, the manifest purpose of a choice-of-law clause is precisely to avoid such a battle.

*Id.* at 468–69, 834 P.2d at 1153–54 (citations omitted).

Relatedly, the Kasgro Defendants argue that the Court should apply Minnesota law to determine the scope of the contractual choice-of-law provision, and "Minnesota law is quite clear that the choice of law provision at issue here would extend to all of Panthera's claims." (Docket No. 116 at 8 (citing *Nw. Airlines*, 111 F.3d at 1392)). The *Nedloyd Lines* court came to this conclusion, reasoning that because a choice-of-law provision selects what body of law governs

the interpretation of the agreement—and the agreement includes the specific choice-of-law provision—the chosen law governs the interpretation of the specific provision. "As we have noted, the choice-of-law clause states: 'This agreement shall be governed by and *construed in accordance with Hong Kong law . . . .*' The agreement, of course, includes the choice-of-law clause itself." *Nelloyd Lines*, 834 P.2d at 1153 n.7. The Kasgro Defendants further argue that applying Minnesota law to determine the scope of the contract provision is appropriate because it serves the interests of federalism. (Docket No. 130 at 7). If the analysis of the choice-of-law provision turns on application of forum law, then the result will vary based on the forum. (*Id.*). This, the Kasgro Defendants argue, cannot be what the parties intended at the time they contracted. (*Id.*). Accordingly, the chosen law should govern the tort claims that are closely related to the contract. (*Id.*).

The Kasgro Defendants maintain that even if the Court adopts Panthera's arguments and applies the narrow/broad language test to determine the choice-of-law clause's reach, the clause at issue is of the "broad" variety, and therefore governs torts. (Docket No. 130 at 8). The Kasgro Defendants cite cases that, they argue, construed similar contractual language as contained in the Original Lease—"This Lease shall be governed by and construed in accordance with the laws of the State of Minnesota." (Docket No. 106-1 at 32, § 23(e)).

3. <u>Analysis</u>

The Court finds that the choice-of-law clause is properly limited to contract claims, and therefore does not require that Minnesota law applies to Panthera's tort claims.

The Kasgro Defendants make strong arguments as to why a choice-of-law provision should be construed to govern tort claims, especially when the torts are interlocked with a contractual relationship. These arguments, however, do not compel the Court to adopt an

approach contrary to that taken by other district courts in Pennsylvania, because alternative arguments could be made to the reverse effect. For example, tort and contract are conceptually distinct areas of law, in that contract law focuses on the bargain created by the parties, while tort law "expresses public policy developed by official decisionmakers in courts and legislatures." Doug Rendleman & Caprice L. Roberts, *Remedies: Cases and Materials* 644 (8th ed. 2011). From this perspective, parties are free to create their own law or pick among various bodies of law with respect to their contracts. *Id.* But with respect to torts, different interests are involved. *Id.*

On the question of whether the contract provision at issue is "broad" or "narrow," both parties have brought forth case law that would likely provide a result in their favor, indicating that case law has not demonstrated a clear rule. However, Panthera has the better argument here. The Kasgro Defendants essentially rely on the presence of two key terms—"governed by" and "construed in accordance with"—to push this clause into the sphere of "broad." Accepting this argument is difficult for several reasons: (1) Panthera points to cases that construe identical clauses as "narrow;" (2) on its face, this language sounds more in contract, referencing what law will govern contract interpretation and validity; and (3) it seems unlikely that when the parties to this contract drew up the terms, they intended for it to govern tort. The Kasgro Defendants essentially concede this third point, in that they state, "None of the parties bargained for or expected such a disjointed state of affairs when they entered into this contract." (Docket No. 116 at 14).[10]

---

[10] The Court notes the implausibility that parties would decide to contract with each other and form a relationship all the while anticipating that the other might tortiously injure them. As such, it follows that the contracting parties did not intend for their choice-of-law provision to cover tort claims. This is especially true given the nature of the contract at issue, which is a

The Court also rejects the Kasgro Defendants' arguments related to the influence of other federal cases from this circuit. (Docket No. 130, at 6–7). Although these decisions are not binding interpretations of Pennsylvania law, they are persuasive given the absence of Pennsylvania case law. *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 675 (3d Cir. 2002); *Lynn ex rel. Lynn v. Yamaha Golf-Car Co.*, 894 F. Supp. 2d 606, 625 (W.D. Pa. 2012) (Hornak, J.). As noted above, neither party has pointed to case law from Pennsylvania state courts addressing this issue, nor has the Court's research revealed cases resolving the scope of choice-of-law provisions.[11] The Court's finding that tort claims are outside the scope of the choice-of-law clause in this case is consistent with case law within the Third Circuit, including *Grimm*, *Jiffy Lube*, and *Composiflex*, as well as cases from many other circuits. *See, e.g.*, *Krock v. Lipsay*, 97 F.3d 630, 645 (2d Cir. 1996).

Accordingly, Minnesota law governs only Panthera's breach of contract claim, but does not control Counts 2 through 9 in the SAC. The Court now proceeds with a further choice of law analysis.

## B. Pennsylvania's Choice of Law Rules

Pennsylvania uses a "hybrid" choice of law approach that combines the "governmental interest analysis" with the Second Restatement of Conflict's "most significant relationship" test. *Carrick v. Zurich-American Ins. Grp.*, 14 F.3d 907, 909 (3d Cir. 1994) (quoting *Lacey v. Cessna*

---

complex lease agreement that was presumably highly negotiated. (Docket No. 106-1). It is clear that the parties intended for Minnesota law to govern the contractual issues, but in this context, it is by no means clear that the parties intended for Minnesota law to govern non-contractual issues. *See also* Hay, Borchers, & Symeonides, § 1810 at 1145 (pointing out that it is often illogical to apply a contractual choice-of-law provision to non-contractual claims because "[t]he stakes are often higher and always *different* in the non-contractual situation").

[11] *Supra* at 19–20 & n.8.

*Aircraft Co.*, 932 F.2d 170, 187 (3d Cir. 1991)); *see also Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007) (citations omitted); *Reginella Constr. Co., Ltd. v. Travelers Cas. & Sur. Co. of Am.*, __ F. Supp. 2d ___, 2013 WL 2404140, at *8 (W.D. Pa. May 31, 2013). This approach requires the Court to first determine whether there is a relevant difference between the law of the jurisdictions whose laws potentially apply, i.e., whether there is a conflict. *Hammersmith*, 480 F.3d at 230. If the laws of the jurisdictions are the same, "then there is no *conflict* at all, and a choice of law analysis is unnecessary." *Id.* (emphasis in original). In the absence of a conflict, "the district court sitting in diversity may refer interchangeably to the laws of the states whose laws potentially apply." *Huber v. Taylor,* 469 F.3d 67, 74 (3d Cir. 2006) (citing *On Air Entm't Corp. v. Nat'l Indem. Co.*, 210 F.3d 146, 149 (3d Cir. 2000)).

If the laws differ, the Court must examine the interests and policies underlying the law of each jurisdiction and determine whether the conflict is "true," "false," or "unprovided for." *Hammersmith*, 480 F.3d at 230–32. A false conflict exists only if one jurisdiction's governmental interests would be impaired by the application of another jurisdiction's law. *Budget Rent-A-Car v. Chappell*, 407 F.3d 166, 170 (3d Cir. 2005). When there is a false conflict, the Court must apply the law of the only interested jurisdiction. *Id.* If no jurisdiction's interest would be impaired if its laws were not applied, there is an "unprovided for" conflict and *lex loci delicti* (the law of the place of the wrong) continues to govern. *Id.* (citing *Miller v. Gay*, 470 A.2d 1353 (Pa. 1983)).

In contrast, "a 'deeper [choice of law] analysis' is necessary only if *both* jurisdictions' interests would be impaired by the application of the other's laws (i.e., there is a true conflict)." *Hammersmith*, 480 F.3d at 230 (alterations in original); *see also Budget Rent-A-Car Sys.*, 407 F.3d at 170 ("A true conflict exists 'when the governmental interests of [multiple] jurisdictions

26

would be impaired if their law were not applied.'") (quoting *Lacey*, 932 F.2d at 187 & n. 15). If a true conflict exists, the Court must "'determine which state has the greater interest in the application of its law.'" *Pacific Employers Ins. Co. v. Global Reinsurance Corp. of Am.*, 693 F.3d 417, 436 (3d Cir. 2012) (quoting *Hammersmith*, 480 F.3d at 231). To this end, the Court must weigh each state's contacts on a qualitative scale according to their relation to the policies and interests underlying the particular issue. *Hammersmith*, 480 F.3d at 231 (citing *Shields v. Consol. Rail Corp.*, 810 F.2d 397, 400 (3d Cir. 1987)).

The Third Circuit Court of Appeals has held that Pennsylvania choice of law analysis "employs depecage,[12] the principle whereby 'different states' laws may apply to different issues in a single case." *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 91 (3d Cir. 2008) (citing *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 462 (3d Cir. 2006)). Therefore, the Court must separately analyze the law of the potentially interested jurisdictions regarding each of the disputed legal issues as between Panthera and the Kasgro Defendants.

In the August Opinion, this Court explicitly limited the reach of its ruling. (Docket No. 105 at 15 n.11). As a result, although the Court notes that Panthera intends to stand on the arguments it made with respect to choice of law for its claims against KLR (Docket No. 127 at 2 n.1 (incorporating its prior brief, filed at Docket No. 91, into its arguments regarding the present motion)), the choice of law issues must be analyzed specifically with respect to Panthera's claims against the Kasgro Defendants.

## C.    Analysis of Conflicts

The parties disagree as to what law should be applied based on Pennsylvania's choice-of-

---

[12] "A French word, depecage (DE-PA-SAJ) is defined as a 'cutting up, dismembering, carving up.'" *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 92, n.5 (3d Cir. 2008) (quoting *Kelly v. Ford Motor Co.*, 942 F. Supp. 1044, 1045 n.2 (E.D. Pa. 1996) (citation omitted)).

law analysis. Panthera urges California law (Docket No. 91 at 12–16; Docket No. 127 at 16–17). The Kasgro Defendants, by contrast, urge Minnesota or Pennsylvania law. (Docket No. 116 at 11).

The parties' arguments regarding choice of law under Pennsylvania's approach are almost entirely focused on the defenses available under Minnesota and Pennsylvania law. In sum, Panthera's tort claims would be barred under Minnesota's independent duty rule, and under Pennsylvania's gist of the action or economic loss doctrines. (*Id.*). By contrast, its tort claims might survive under California law. (*Id.*).

### 1.     Analysis of Whether an Actual Conflict Exists

The core of the Kasgro Defendants' argument is that Panthera's dispute sounds in contract, rather than in tort, and so Panthera should be limited to contractual causes of action. (*Id.*). The Kasgro Defendants propose a general choice of law analysis applicable for all of Panthera's tort claims against them. (Docket No. 116 at 12) ("Even without reaching Panthera's particular claims one by one, the most salient difference at this stage is that Panthera would be limited to its contract claim under both Minnesota and Pennsylvania law, but not under California law."). Panthera likewise analyzes the tort claims generally. (Docket No. 91 at 12 n.8).

The Court must first compare the potentially applicable states' laws and determine whether an actual conflict exists. *Hammersmith*, 480 F.3d at 230. The parties agree that an actual conflict exists because of the defenses available under Pennsylvania and Minnesota laws that curtail recovery for tort actions arising out of breach of contract. (Docket No. 91 at 12, n.8; Docket No. 116 at 12–13).

Under Minnesota law, the Kasgro Defendants can assert the state's "independent duty rule," which would permit the Defendants to argue that all of Panthera's tort claims are barred

because they did not arise independently from the asserted breach of contract. *Russo v. NCS Pearson, Inc.*, 462 F. Supp. 2d 981, 994 (D. Minn. 2006). This rule provides that "when a contract defines a relationship between two parties, a plaintiff is not entitled to recover tort damages save for exceptional cases in which a breach of contract 'constitutes or is accompanied by an independent tort.' " *Id.* (quoting *Wild v. Rarig,* 302 Minn. 419, 234 N.W.2d 775, 789–90 (1975)). The Kasgro Defendants' main argument—that the relationship at issue is primarily contractual—falls squarely within this doctrine. *Id.* As such, Minnesota law offers the Kasgro Defendants a possible defense that would eliminate each of Panthera's tort claims.

Under Pennsylvania law, the Kasgro Defendants would have two potential defenses—the economic loss rule and the gist of the action doctrine. First, the economic loss doctrine "precludes recovery in tort if the plaintiff suffers a loss that is exclusively economic, unaccompanied by an injury to either property or person." *Bouriez v. Carnegie Mellon Univ.*, 430 F. App'x 182, 187 (3d Cir. 2011); *see also Stillwagon*, 2013 WL 1180312, at *9 (citation omitted). Second, the gist of the action doctrine precludes tort claims "1) arising between the parties; 2) when the alleged duties breached were grounded in the contract itself; 3) where any liability stems from the contract; and 4) when the tort claim essentially duplicates the breach of contract claim or where the success of the tort claim is dependent on the success of the breach of contract claim." *Reardon v. Allegheny Coll.*, 926 A.2d 477, 486 (Pa. Super. Ct. 2007).[13] Accordingly, "a claim should be limited to a contract claim when the parties' obligations are

---

[13] The Pennsylvania Supreme Court has not adopted the gist of the action doctrine, but the Third Circuit Court of Appeals predicted that this doctrine would be adopted based on its consistent application in the Pennsylvania Superior Court. *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 103 n.10 (3d Cir. 2001) (citations omitted).

The Court notes that the Pennsylvania Supreme Court recently decided to hear an appeal that involves the gist of the action doctrine. *Bruno v. Erie Ins. Co.*, 74 A.3d 1027, 1028 (Pa. 2013).

defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.,* 247 F.3d 79, 104 (3rd Cir. 2001) (internal quotation omitted). Given that the only alleged relationship between the parties is contractual, the Kasgro Defendants make a strong argument that all of their duties to Panthera arose from their contractual relationship, implicating the gist of the action doctrine. *Id.* This doctrine, along with the economic loss doctrine, potentially would permit the Kasgro Defendants to successfully argue that Panthera is precluded from recovering in tort. *Id.*

Under California law, however, the Kasgro Defendants would face a tougher burden in mounting a successful defense against Panthera's tort claims. (Docket No. 116 at 13). California recognizes an economic loss doctrine, *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal.4th 979, 22 Cal.Rptr.3d 352, 102 P.3d 268 (Cal. 2004), but it is narrower in scope than Pennsylvania's because courts interpret the doctrine to be inapplicable in cases of affirmative fraud. *Cnty. of Santa Clara v. Atl. Richfield Co.*, 137 Cal. App. 4th 292, 328, 40 Cal. Rptr. 3d 313, 344 (Cal. Ct. App. 2006) ("We believe that the California Supreme Court's decision in *Robinson* precludes the application of the economic loss rule to any intentional affirmative fraud action where the plaintiff can establish that the fraud exposed the plaintiff to liability."). Consequently, because Panthera alleges intentional fraud, it may be able to recover both contract and tort damages under California law. *Id.*

To summarize, if Minnesota law applies, Panthera's tort claims may be barred if the Kasgro Defendants prove they do not arise from an independent duty. If Pennsylvania law applies, the Kasgro Defendants could use the economic loss and gist of the action doctrines to

defend against each of Panthera's tort claims.[14] If California law applies, the Kasgro Defendants may not be able to prove that the state's economic loss doctrine applies, given its narrower scope, and Panthera may be able to recover for both contract and tort claims. Therefore, the Court finds that an actual conflict exists based on the availability of the potentially complete defenses available in Pennsylvania or Minnesota.

2.     Analysis of Whether a True Conflict Exists

The Court now turns to an examination of the governmental policies that underlie the various states' laws in order to determine whether a "true" conflict exists. *Hammersmith*, 480 F.3d at 230.

First, Panthera argues that Minnesota has no interest in applying its law here. (Docket No. 91 at 15). Minnesota's only connection to this case is that the parties selected Minnesota law to govern their contractual relationship. (*Id.*). The Kasgro Defendants do not directly argue in response, except to note that the August Opinion found a true conflict where "California's plaintiff-friendly laws run up against more defendant-friendly laws in other states." (Docket No. 116 at 13). The inference is that Minnesota has an interest in protecting defendants. On the other hand, Panthera's argument is on point: the Kasgro Defendants are *not* residents of Minnesota. (Docket No. 91 at 15). Minnesota, then, does not have an interest in protecting the Kasgro Defendants by having its independent tort rule govern in this case. *Budget Rent-A-Car Sys., Inc. v. Chappell*, 407 F.3d 166, 177–78 (3d Cir. 2005).

Second, Pennsylvania has an interest in its law being applied. The Court's articulation in

---

[14] The Court notes that "there is a split among courts in Pennsylvania and the federal district courts as to whether the economic loss doctrine applies to intentional fraud claims." *Oldcastle Precast, Inc. v. VPMC, Ltd.*, CIV.A. 12-6270, 2013 WL 1952090, at *11 (E.D. Pa. May 13, 2013) (collecting cases), *reconsideration denied,* CIV.A. 12-6270, 2013 WL 3865112 (E.D. Pa. July 26, 2013).

the August Opinion that Pennsylvania's interest in applying its defendant-friendly law is implicated because the Kasgro Defendants are domiciled here. (Docket No. 105 at 22).

Third, California has an interest in its law governing this case and allowing Panthera to potentially recover both tort and contract damages. *Cnty. of Santa Clara*, 137 Cal.App.4th at 328, 40 Cal.Rptr.3d at 344. California has crafted a narrow economic loss doctrine in order to ensure that plaintiffs are not precluded to recovering on tort where "the extra measure of blameworthiness inhering in fraud" is present. *Id.* (quoting *Robinson*, 34 Cal.4th at 991, 22 Cal.Rptr.3d at 352). Because Panthera is a California resident and suffered alleged harm within California, it falls within the scope of persons that California law intends to protect. *Budget Rent-A-Car Sys.*, 407 F.3d at 177–78.

Accordingly, the Court finds that a true conflict exists with respect to Pennsylvania and California law, but not as to Minnesota.

### 3. Contacts and Interests Analysis

Finally, because a true conflict is present, the Court must analyze which state has the stronger interest in its law being applied. *Hammersmith*, 480 F.3d at 231. In this analysis, the Court applies the factors set out in the Second Restatement of Conflicts. *Id.* at 232–33.

The relevant contacts for actions in tort are enumerated in Restatement (Second) of Conflict of Laws § 145(2)(a)–(d), and include: "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered." *Taylor v. Mooney Aircraft Corp.*, 265 F. App'x 87, 91 (3d Cir. 2008). In fraud or misrepresentation cases, the Court looks to the factors set forth in § 148 of Restatement (Second) of Conflict of Laws. Under subsection (2) of § 148,

when the plaintiff's action in reliance takes place in a different state than where the false representations were made and received, courts weigh the following factors:

> (a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations,
> (b) the place where the plaintiff received the representations,
> (c) the place where the defendant made the representations,
> (d) the domicil, residence, nationality, place of incorporation and place of business of the parties,
> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

§ 148(2). *See Maniscalco v. Brother Int'l (USA) Corp.*, No. 11–3032, 2013 WL 856379, at *3–6 (3d Cir. Jan.16, 2013).

Under the § 145 factors general to torts, California has the stronger interest. Section 156 of the Restatement applies on this point, stating that "[t]he applicable law [under § 145] will usually be the local law of the state where the injury occurred." Similarly, federal courts applying Pennsylvania choice of law rules have recognized that where the injury is pecuniary in nature, the plaintiff's principal place of business is generally considered the place of injury and represents a contact of substantial significance. *CAT Internet Servs., Inc. v. Magazines.com Inc.*, Civ. No. 00-2135, 2001 WL 8858, at *4 (E.D. Pa. Jan 4. 2001) (citation omitted). The harms that Panthera alleges in the SAC include lost profits and business opportunities, as well as diminished rental payments. (Docket No. 106 at ¶¶ 160, 162, 167, 177, 187–88) All of these purported injuries were felt in California. (*Id.*).

Applying these factors, California clearly has a stronger interest in applying its law than does Pennsylvania. *Apple v. Ford Motor Co.*, 69 Pa. D. & C.4th 236, 241 (Com. Pl. 2004) ("If

the injury occurred out of state, Pennsylvania will apply the law of that state even if the law is detrimental to a Pennsylvania resident suing in Pennsylvania. The only exception appears to be where the state in which the injury occurred has a lack of interest in the measure of damages to be recovered.") (citations omitted). Panthera is a resident of California and the injury was felt within that state. (Docket No. 91 at 14–15). Although the conduct giving rise to the alleged torts took place in Pennsylvania and the Kasgro Defendants reside here, the place where the harm was felt is more significant for this analysis. *Apple*, 69 Pa. D. & C.4th at 241.

Moreover, the Kasgro Entities' argument as to why Pennsylvania law applies rings hollow in the context of tort. The Kasgro Entities assert that Pennsylvania has a stronger interest in applying its law because Panthera reached out to the Kasgro Entities in Pennsylvania and sought out a relationship. (Docket No. 116 at 15–16). Further, they contend that they "never sought a relationship with Panthera, or with the law of California." (*Id.* at 15). In this Court's estimation, however, Panthera would not have reached out to the Kasgro Entities with an expectation that the Kasgro Entities would tortiously injure it. Therefore, the Kasgro Defendants' arguments are unavailing. California has a stronger interest in applying its law to the tort claims in this case, and therefore California law will be applied.

## IV. THE KASGRO ENTITIES' MOTION TO DISMISS PANTHERA'S SECOND AMENDED COMPLAINT

Having resolved the choice of law issues, the Court turns to whether Panthera's SAC survives the Kasgro Defendants' Motion to Dismiss Counts 2 through 9. The Kasgro Defendants argue that Panthera's claims cannot survive under Rule 12(b)(6) if Minnesota or Pennsylvania law applies, but raise only one applicable argument under California law—that the SAC fails to sufficiently plead facts supporting the alter ego theory. (Docket No. 116 at 17; Docket No. 130 at

9–10).

The Court analyzed the sufficiency of Panthera's pleadings related to the alter ego doctrine above.[15] The same analysis applies to the Kasgro Defendants' Motion to Dismiss, and the Court reincorporates that analysis. Because the SAC states a cognizable claim that KRL and the Kasgro Defendants acted as alter egos, the Kasgro Defendants' Motion is denied.

## V.    CONCLUSION

For the reasons set out above, KRL's Motion to Dismiss [113] is denied, in part, and granted, in part. Specifically, the Motion is denied with respect to (1) the alter ego doctrine; (2) fraud; (3) aiding and abetting fraud; and (4) unfair competition. The Motion is granted with respect to Panthera's claim for civil conspiracy, and that claim is dismissed.

With respect to the Kasgro Defendants' Motion to Dismiss [115], California law governs each claim. The Court having found sufficient allegations of an alter ego theory, their Motion to Dismiss is denied.

An appropriate order follows.

---

[15] *Supra*, section III.B.1.